UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LA CHANDRA MARZETTA,<br><br>        Plaintiff,<br><br>    v.<br><br>COMCAST, a Corporation,<br><br>        Defendant. | No. 2:13-cv-00598-GEB-DAD<br><br>ORDER DENYING 56(D) REQUEST; GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT |

Defendant Comcast moves under Federal Rule of Civil Procedure ("Rule") 56 for summary judgment on all claims in Plaintiff's Complaint, or in the alternative, for partial summary judgment. Plaintiff opposes the motion and requests a continuance of consideration of the motion under Rule 56(d) so that she may conduct additional discovery.

Plaintiff is a former employee of Defendant and alleges the following state claims in her Complaint: 1) failure to accommodate her disability; 2) failure to engage in an interactive process to determine an effective reasonable accommodation for her disability; 3) disability discrimination; 4) retaliation; and 5) wrongful termination in violation of public policy.

1

## I. PLAINTIFF'S RULE 56(D) REQUEST

Plaintiff requests under Rule 56(d) that Defendant's summary judgment motion not be considered until after she deposes a former employee of Defendant. Defendant counters this "request . . . should be denied [inter alia] [because] Plaintiff unreasonably delayed in seeking to take [the referenced former employee's] deposition." (Defs.' Reply 12:5-7, ECF No. 30.)

Rule 56(d) authorizes continuance of the motion if "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). However, the request may be denied if it is evident that the nonmovant "failed diligently to pursue discovery in the past." Chance v. Pac-Tel Teletrac Inc., 242 F.3d 1151, 1161 n. 6 (9th Cir. 2001) (discussing former Rule 56(f))(quoting Nidds v. Schindler Elevator Corp., 113 F.3d 912, 921 (9th Cir. 1996)); see also Martinez v. Columbia Sportswear USA Corp., 553 F. App'x 760, 761 (9th Cir. 2014) ("In ruling on a 56(d) motion, a district court considers . . . whether the movant was diligent.")

Plaintiff has not shown that the discovery she seeks should be authorized since it is sought after the expiration of the discovery completion period prescribed in the Rule 16 scheduling order. Even though Plaintiff "d[oes] not specifically request that the court modify the [discovery completion period prescribed in the] scheduling order," this must occur before Plaintiff could be authorized to conduct the discovery she seeks. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 608 (9th Cir. 1992); accord Saavedra v. Murphy Oil U.S.A., Inc., 930 F.2d 1104,

2

1107 (5th Cir. 1991) (finding no abuse of discretion to deny Rule 56(f) motion where movant "should have sought an extension of the discovery cutoff date [before moving for continuance.]"); see generally Pfingston v. Ronan Engineering Co.,284 F.3d 999, 1005 (9th Cir. 2002) (stating "[t]he failure to conduct discovery diligently is grounds for the denial of a Rule 56([d]) motion." (discussing former rule 56(f)). Rule 16 prescribes that a Scheduling Order shall not be modified absent a showing of "good cause," and Plaintiff has not satisfied this standard. Fed. R. Civ. P. 16(b).

The essence of Plaintiff's Rule 56(d) argument is that Defendant was obligated to tell her the whereabouts of the referenced witness. However, this issue should have first been litigated before a magistrate judge during the discovery completion period as prescribed in Local Rule 302(c) and the Scheduling Order. See Freeman v. Allstate Life Ins. Co., 253 F.3d 533, 537 (9th Cir. 2001) (finding no abuse of discretion where the district court refused to address a discovery issue since Plaintiff "failed to prosecute the issue before the magistrate judge as required by E.D. Cal. Local Rule []302(c)" (citing former rule 72-302(c)).

Therefore, Plaintiff's rule 56(d) request is denied.

## II. DEFENDANT'S SUMMARY JUDGMENT MOTION

### a. Legal Standard

A party seeking summary judgment under Rule 56 bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "A fact is 'material' when, under the

governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). An issue of material fact is "genuine" when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).

If the movant satisfies its "initial burden," "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (quoting former Fed. R. Civ. P. 56(e)). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of material in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Summary judgment "evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Sec. & Exch. Comm'n v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

Further, Local Rule 260(b) prescribes:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and

>deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

If the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006).

>Because a district court has no independent duty "to scour the record in search of a genuine issue of triable fact," and may "rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment," . . . the district court . . . [is] under no obligation to undertake a cumbersome review of the record on the [nonmoving party's] behalf.

Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)); see also Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

**b. Uncontroverted Facts**

The following uncontroverted facts are pertinent to the summary judgment motion. Plaintiff was hired by Defendant as a Customer Account Executive ("CAE") in December, 2006, and began working from home as a virtual CAE in 2009. (Pl.'s Resp. Def.'s Statement Undisputed Material Facts ("Pl.'s Resp.") ¶¶ 1-2, ECF No. 27-3.) "Plaintiff's job as a virtual CAE required the use of a computer, including frequent typing and use of a mouse." (Id. ¶ 4.) In April 2011, Plaintiff reported to Defendant that she was

experiencing "shocks" "from her elbows down to her fingers," and gave Defendant a "Work Status Report" from her treating physician which limited, inter alia, the amount of keyboarding and mousing she could do per day. (Id. ¶¶ 6-8.)

"On June 8, 2011, Plaintiff's work restrictions were changed to two 5-minute hand rest breaks from typing each hour[,]" and "[o]n June 30, 2011, Plaintiff received an additional work restriction of no typing after 5 hours." (Id. ¶¶ 22-23.) Defendant reassigned Plaintiff in July 2011, to a "modified duty position in the lobby of [one of its offices]." (Id. ¶ 27.) After this reassignment, "Plaintiff sent an email [on July 18, 2011], to [Defendant's Return to Work Coordinator Dena] Galvan, stating that Plaintiff was being forced to work outside of her [work] restriction." (Id. ¶ 32.) "Plaintiff [also gave deposition testimony that] she complained orally to her . . . supervisor Candice Rees and to Galvan that she was being forced to work outside of her work restrictions . . . ." (Id. ¶ 29.)[1] Defendant then "provided Plaintiff with a leave of absence commencing on July 18, 2011 to accommodate her restrictions." (Id. ¶ 33.)

During Plaintiff's leave in August 2011, Defendant was notified that Plaintiff's work restriction changed to "no bilateral hand repetitive activities." (Id. ¶ 36.) This restriction "meant that Plaintiff could not type or engage in any

---

[1] This sentence quotes one of Defendant's statements of uncontroverted facts, in which Defendant states: "Plaintiff alleges she complained orally . . . ." (Pl.'s Resp. ¶ 29 (emphasis added).) However, the word "testified" is used instead of the word "alleges" since Plaintiff testified during her deposition that she complained orally to her supervisors. (Decl. of Brain H. Chun, Ex A. Dep. of La Chandra Marzetta 131:7 – 134:22, ECF No. 24-1.)

6

other repetitive hand activity for any length of time." (Id. ¶ 37.)[2] However, Plaintiff's treating physician Dr. Daniel Fields testified that whether this restriction precluded Plaintiff from using a mouse "depend[ed] on what [Plaintiff was] doing using a mouse." (Decl. of Douglass E. Jaffe, Ex. B, Dep. of Daniel J. Fields, ("Fields Dep.") 20:11-11, ECF No. 29-2; see Defs.' Response to Pls.' Statement of Material Facts ("Defs.' Resp") ¶ 1, ECF No. 34 (citing Fields Dep. 20:3-21).)[3] Further, when Dr. Fields was asked during his deposition whether this restriction precluded Plaintiff from "pointing[,] . . . clicking[,] and populating fields" with a mouse, he testified he would "have to . . . watch [Plaintiff preform these tasks] and have a feeling about if it was repetitive." (Fields Dep. 20:20-21; see Defs.' Resp. ¶ 1.)

"On April 4, 2012, Lerma Devilla, a Human Resources Business Leader for Comcast, sent a letter to Plaintiff requesting that she contact her to discuss her return to work status," and asked Plaintiff to submit a "Certification of Health Care Provider" form if she still needed a work accommodation. (Id. ¶¶ 39-40.) "On or about April 12, 2012, Plaintiff submitted . . . [this] form completed by Dr. Fields, which recommended [voice-activated software][4] as an accommodation." (Id. ¶ 41.)

---

[2] Plaintiff disputes the facts in this sentence but does not cite evidence supporting her position.
[3] Defendant disputes the portion of Plaintiff's Statement of Undisputed Facts which cites Dr. Fields' testimony concerning whether Plaintiff could use a mouse, arguing in a conclusory manner that this portion of Plaintiff's Statement is "ambiguous and incomplete." (Defs.' Resp. ¶ 1.) However, this portion of Plaintiff's Statement is clear and supported by evidence, and Defendant cites no evidence to controvert it.
[4] Dr. Fields recommended the use of "voice dictation" as a reasonable accommodation (Pl.'s Resp. ¶ 41); however, the parties use the terms "voice dictation" and "voice-activated software" interchangeably. (See Pl.'s Opp'n

7

"Plaintiff also submitted to Devilla a Work Status Report completed by Dr. Fields, reporting that Plaintiff's work restrictions remained the same, i.e., no repetitive hand activities." (Id. ¶ 42.) "On April 25, 2012, Plaintiff submitted to Comcast a new Work Status Report completed by Dr. Fields reporting that Plaintiff's work restrictions of 'no repetitive bilateral hand activities' were permanent and would not change."(Id. ¶ 43.)[5]

"In response to Dr. Fields' April 25, 2012 report regarding Plaintiff's work restrictions, Devilla began an internal job search to determine whether there were any jobs for which Plaintiff was qualified and could perform within her permanent restrictions." (Id. ¶ 44.)[6] Devilla found that "every open job for which Plaintiff was qualified required some amount of typing as an essential job function." (Id. ¶ 45.)[7] "On or about May 30, 2012, Devilla spoke with Plaintiff who told her that she could not perform any repetitive work with her hands." (Id. ¶ 47.)

Subsequently, "[o]n June 20, 2012, Devilla spoke with Plaintiff and informed her that her employment was being terminated because the company was unable to accommodate her permanent work restrictions." (Id. ¶ 49.) "Plaintiff's employment was terminated effective June 21, 2012." (Id. ¶ 50.) "At the time

---

10:1-11 (using "voice dictation" and "voice-activated software" interchangeably); Def.'s Resp. ¶ 2 (same).) For consistency, the term "voice-activated software" is used.

[5] Plaintiff disputes the facts in this sentence but points to no evidence supporting her position.

[6] Plaintiff disputes the facts in this sentence but does not cite evidence supporting her position.

[7] Plaintiff disputes the facts in this sentence but does not cite evidence supporting her position.

1 Devilla made the decision to terminate Plaintiff's employment,
2 she had no knowledge of any complaint Plaintiff lodged regarding
3 accommodations made for her." (Id. ¶ 62.)[8] Further, "Devilla did
4 not have the authority to determine corporate policy" for
5 Defendant, nor was she "an officer or director of Comcast." (Id.
6 ¶¶ 64-65.)[9]

    **c. Discussion**[10]

        **i. Failure to Accommodate Claim**

9         Defendant argues that its summary judgment motion
10 should be granted on Plaintiff's failure to accommodate claim
11 because Plaintiff could not type and therefore was unable to
12 perform an essential function of any job at Comcast for which she
13 was qualified. Plaintiff responds that Defendant has not shown
14 that she could not use voice-activated software as an
15 accommodation for the typing requirement; nor that she could not
16 use a mouse, which is required by Defendant's computer systems
17 even when an employee uses voice-activated software.

18         "An 'employer cannot prevail on summary judgment on a
19 claim of failure to reasonably accommodate unless it establishes
20 through undisputed facts' that 'reasonable accommodation was

---

[8] Plaintiff disputes the facts in this sentence but does not cite evidence supporting her position.

[9] Plaintiff disputes the facts in this sentence but does not cite evidence supporting her position.

[10] Defendant makes several objections to evidence submitted by Plaintiff in her opposition to Defendant's motion. These objections need not be addressed since the evidence to which Defendant objects is not considered. See e.g., Burgess v. Townsend & Townsend & Crew LLP Long Term Disability Plan, C0705310JSW, 2008 WL 4531812, at *2, n. 1 (N.D. Cal. Oct. 7, 2008) ("The Court need not rule on Defendant's evidentiary objections because the Court did not need to consider such evidence in order to resolve the parties' cross-motions for summary judgment.")

offered and refused,' that 'there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation,' or that 'the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith.'" Dep't of Fair Employment & Hous. v. Lucent Technologies, Inc., 642 F.3d 728, 743-44 (9th Cir. 2011)(quoting Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 263 (2000)).

Defendant argues in essence that the declarations of Lerma Devilla and Dena Galvan demonstrate that Plaintiff could not be accommodated with voice-activated software and therefore there was no vacant position at Comcast for which Plaintiff was qualified. Devilla declares: "Because of efforts to accommodate other employees with similar work restrictions, I knew that the available voice-activated software was not compatible with Comcast's billing and other computer systems, which required the frequent use of a mouse to populate fields and click on drop down menus." (Decl. of Lerma Devilla ¶ 8, ECF No. 21.) Galvan essentially makes an identical averment. (See Decl. of Dena Galvan ¶ 11, ECF No. 22.)

However, Dr. Fields gave deposition testimony that whether Plaintiff could use a mouse "depended on what [Plaintiff is expected to do] using a mouse," and that he would have to "watch" Plaintiff "point[,] . . . click[,] . . . and populat[e] fields" with a mouse to have "a feeling about if it was repetitive" and therefore within Plaintiff's work restriction.

1  (Fields Dep. 20:12-21.) The declarations of Devilla and Galvan
2  evince that they assumed Plaintiff's work restriction precluded
3  her from using a mouse. Therefore, Defendant has not shown there
4  is no genuine issue of fact concerning whether Plaintiff could
5  use a mouse in the manner required when operating the available
6  voice-activated software on Defendant's computer systems.
7        For the stated reasons, this portion of Defendant's
8  motion is denied.

### ii. Failure to Engage in the Interactive Process

10       Defendant seeks summary judgment on Plaintiff's
11 interactive process claim, which is brought under Section
12 12940(n) of the California Government Code. Defendant argues its
13 employees "continuously communicated with Plaintiff regarding her
14 work restrictions . . . for over a year[, and] [o]nce Plaintiff's
15 work restriction [permanently] prohibited her from any repetitive
16 bilateral hand activities . . . there was no position that
17 Plaintiff would have been able to perform with or without
18 reasonable accommodation because every position . . . required
19 some typing as an essential job function." (Def.'s Mot. Summ. J.
20 ("Def.'s Mot.") 10:11-16, ECF No. 20.)

21       Section 12940(n) states, in pertinent part: "[i]t is
22 an unlawful employment practice . . . [f]or an employer . . . to
23 fail to engage in a timely, good faith, interactive process with
24 the employee . . . to determine effective reasonable
25 accommodations, if any, in response to a request for reasonable
26 accommodation by an employee or applicant with a known physical
27 or mental disability or known medical condition." Cal. Gov't Code
28 § 12940. "[T]he interactive process requires communication and

good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." Lucent, 642 F.3d at 742-43 (quoting Nadaf-Rahrov v. Neiman Marcus Grp., Inc., 166 Cal. App.4th 952, 984 (2008) (alteration in original) (internal quotation marks omitted).

Defendant has not shown that it communicated with Plaintiff to determine whether Plaintiff could be accommodated by allowing her to use a mouse in conjunction with voice-activated software. Therefore, this portion of the summary judgment motion is denied. Cf. Violan v. On Lok Senior Health Servs., 12-CV-05739-WHO, 2013 WL 6907153, at *10 (N.D. Cal. Dec. 31, 2013) (denying Defendant's motion for summary judgment on interactive process claim where "[t]here [was] evidence that [Defendant's] personnel . . . failed to meaningfully communicate with [Plainitff] regarding [her] [job] modification or other possible accommodations."); Scotch v. Art Inst. of California-Orange Cnty., Inc., 173 Cal. App. 4th 986, 1014 (2009) ("Each party must . . . undertake reasonable efforts to communicate its concerns . . . .").

### iii. Disability Discrimination Claim

Defendant seeks summary judgment on Plaintiff's disability discrimination claim, arguing that "Plaintiff cannot establish a prima facie case of disability discrimination because she cannot prove that she was . . . capable of performing the essential functions of any position with Comcast." (Def.'s Mot. 11:4-7.)

"[D]isability discrimination claims [are evaluated] under a three-step framework. First, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. The employer then must offer a legitimate nondiscriminatory reason for the adverse employment decision. Finally, the plaintiff bears the burden of proving the employer's proffered reason was pretextual." Brundage v. Hahn, 57 Cal. App. 4th 228, 236, (1997).

Concerning such discrimination, California Government Code Section 12940(a) states, in pertinent part: "[i]t is an unlawful employment practice. . . [f]or an employer, because of the . . . physical disability, . . . of any person, to . . . bar or to discharge the person from employment . . . ." Cal. Gov't Code § 12940(a). To "establish a prima facie case [a plaintiff must] prov[e] that . . . [she] is a qualified individual." Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 254 (2000)(internal quotation marks omitted)(quoting Brundage, 57 Cal. App. 4th at 236. To be a "qualified individual" means "that [the plaintiff] can perform the essential functions of the job with or without reasonable accommodation." Green v. State, 42 Cal. 4th 254, 260, 165 P.3d 118, 121 (2007).

A genuine issue of material fact exists concerning whether Plaintiff's disability could have been reasonably accommodated. However, Defendant argues in the alternative that Plaintiff cannot establish a prima facie case because "she cannot show that her employment was terminated because of her disability." (Def.'s Mot. 11:12-13.)

Devilla, the employee who terminated Plaintiff's employment, concluded that Plaintiff could not use a mouse and

therefore could not be accommodated. (Decl. of Lerma Devilla ¶ 8; see also Pl.'s Resp. ¶ 49.) However, Plaintiff has presented evidence indicating that Defendant did not adequately investigate whether Plaintiff could use a mouse to the degree required. "The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that [could have led] to [the challenged] discharge . . . ." Humphrey v. Mem'l Hospitals Ass'n, 239 F.3d 1128, 1139 (9th Cir. 2001); see also id. ("[T]he consequence of the failure to accommodate is . . . frequently an unlawful termination."); Wilson v. Sears, Roebuck & Co., 08-CV-2061-L JMA, 2011 WL 1119071, at * 6 (S.D. Cal. Mar. 28, 2011)(citing Nadaf-Rahrov, 166 Cal. App. 4th at 963.) ("When an employer takes an adverse action because he or she believes that the employee's disability prevented him or her from performing essential functions of the job and there were no other jobs available to accommodate the employee, the action is taken because of a disability for purposes disability discrimination.") Therefore, Defendant has not shown that there is no genuine material factual dispute concerning whether Plaintiff's employment was terminated because of her disability.

        Defendant argues in the alternative that Plaintiff's discrimination claim fails because Defendant had a legitimate non-discriminatory reason for terminating Plaintiff's employment: "there was no job that Plaintiff could perform given her work restrictions." (Def.'s Mot. 12:9-10.) Defendant has not shown that it had a legitimate nondiscriminatory reason for the termination in light of the disputed facts concerning whether

Plaintiff could have used a mouse in conjunction with voice-activated software. See United Parcel Serv., Inc. v. Dep't of Fair Employment & Hous., G049493, 2014 WL 1679134, at * 13 (Cal. Ct. App. Apr. 29, 2014)(unpublished)[11]("Before terminating an employee because of a disability, the employer must individually assess whether the disability actually prevents the employee from performing [essential job] functions. Unless the employer conducts an individualized assessment, it cannot have a reasonable, good faith belief in the employee's inability to perform his or her essential job functions, and therefore lacks a legitimate, nondiscriminatory reason for terminating the employee."); cf. Lucent, 642 F.3d at 747 (finding Defendant's legitimate nondiscriminatory reason was not a pretext for discrimination where "the undisputed facts demonstrate that [Defendant] attempted to accommodate [Plaintiff] by continually assessing him on an individual basis." (emphasis added)).

Therefore, this portion of Defendant's motion is denied.

### iv. Retaliation Claim

Defendant seeks summary judgment on Plaintiff's retaliation claim, which is based on the allegation that Defendant terminated Plaintiff's employment in retaliation for making a request for accommodation in July 2011 while Plaintiff was working in a modified duty position in the lobby of one of Defendant's offices. Defendant argues "Plaintiff cannot establish a causal link between her [July 2011] request for accommodation

---

[11] Federal courts "may consider unpublished state decisions, even though such opinions have no precedential value." Employers Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 n. 8 (9th Cir.2003).


and the decision to terminate her employment" since "Devilla . . . was not aware of Plaintiff's . . . [July 2011] complaint." (Def.'s Mot. 13:9-10, 15-16.)

"To establish a prima facie case of retaliation . . ., a plaintiff must show '(1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a <u>causal link</u> existed between the protected activity and the employer's action.'" <u>Scotch</u>, 173 Cal. App. 4th at 1020 (emphasis added) (quoting <u>Yanowitz v. L'Oreal USA, Inc.</u> 36 Cal. 4th 1028, 1042 (2005)).

It is uncontroverted that at the time Devilla made the decision to terminate Plaintiff's employment, Devilla had no knowledge of Plaintiff's July 2011 complaint. (Pl.'s Resp. ¶ 62.) Accordingly, Plaintiff's evidence is insufficient to establish a causal connection between her July 2011 request for an accommodation and the June 2012 decision to terminate her employment. Therefore, this portion of Defendant's motion is granted.

**v. Wrongful Termination in Violation of Public Policy**

Defendant seeks summary judgment on Plaintiff's wrongful termination claim in violation of public policy, arguing it "is derivative of . . . [Plaintiff's] claims for failure to provide reasonable accommodation, disability discrimination and retaliation," which Defendant contends, "are meritless." (Def.'s Mot. 14: 13-15.)

The elements of this tort "are (1) the existence of a public policy and (2) a nexus between the public policy and an employee's termination . . . . '[D]isability discrimination can

16

form the basis of a common law wrongful discharge claim . . . .'" Lucent, 642 F.3d at 749 (citation omitted) (quoting City of Moorpark v. Superior Court, 18 Cal. 4th 1143, 1161 (1998)).

Since Defendant has not shown the absence of a genuine issue of material fact concerning Plaintiff's claims alleging failure to accommodate, failure to engage in the interactive process, and disability discrimination, this portion of its motion and is denied.

However, Defendant has prevailed on the portion of its motion challenging Plaintiff's retaliation claim, and therefore to the extent Plaintiff's wrongful termination claim in violation of public policy claim is derivative of that claim, the motion is granted. See Lucent, 642 F.3d at 749 (dismissing wrongful termination claims where there were "no genuine issues of material fact remaining as to . . . [Plaintiff's] disability discrimination claims.")

**vi. Punitive Damages Claim**

Defendant seeks summary judgment on Plaintiff's punitive damages claim, arguing Plaintiff cannot establish that Lerma Devilla, the employee who made the decision to terminate Plaintiff's employment, was an officer, director, or managing agent of Comcast.

Section 3294 of the California Civil Code states, in pertinent part:

> An employer shall not be liable for [punitive] damages . . . based upon acts of an employee . . ., unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the

17

> wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice <u>must be on the part of an officer, director, or managing agent of the corporation</u>.

Cal. Civ. Code § 3294(b)(emphasis added).

Here, it is uncontroverted that Devilla, who terminated Plaintiff's employment, was not an officer or director of Defendant. (Pl.'s Resp. ¶ 64.) Further, Devilla was not "managing agent" since it is uncontroverted that she did not have the authority to determine corporate policy. (<u>Id.</u> ¶ 65.) <u>See</u> <u>White v. Ultramar, Inc.</u>, 21 Cal. 4th 563, 566-67 (1999) ("[T]he term 'managing agent' . . . include[s] only those corporate employees who exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy."). Therefore, this portion of Defendant's motion is granted.

### III. CONCLUSION

For the stated reasons, Plaintiff's Rule 56(d) request is denied. Further, Defendant's Motion for Summary Judgment is granted in part and denied in part.

Dated: August 14, 2014

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge